IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JESSE HERNANDEZ SERRANO, | § | |
| Plaintiff, | § | |
| v. | § | NO. EP-15-CV-132-MAT |
| NANCY A. BERRYHILL,[1] ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § | |
| Defendant. | § | |

## OPINION

This is a civil action seeking judicial review of an administrative decision pursuant to 42 U.S.C. § 405(g). Plaintiff Jesse Hernandez Serrano ("Serrano") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for benefits under the Social Security Act ("the Act"). The parties consented to the transfer of the case to this Court for determination and entry of judgment. *See* 28 U.S.C. § 636(c); Local Court Rule CV-72. For the reasons set forth below, the Commissioner's decision will be **REVERSED** and the action **REMANDED** for further administrative proceedings.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this case.

# I. FACTS & PROCEDURAL HISTORY

On August 2, 2007, Serrano filed an application for Disability Insurance Benefits ("DIB") in which he alleged disability beginning December 1, 2006. (R. 28-30).[2] On October 30, 2007, Serrano was notified his application had been approved, but that he needed to provide his birth certificate to the Social Security Administration ("SSA") before benefits would be paid.[3] (R. 37). On November 4, 2007, he received a Notice of Award from the SSA. (R. 38-40). Nearly three years later, on August 18, 2010, Serrano returned to the Social Security office with a delayed birth certificate from the State of New Mexico and a certificate of baptism. (R. 55). The SSA referred the matter to the Office of the Inspector General ("OIG") for investigation of possible fraud.[4] *Id.*

On December 7, 2010, a criminal complaint was filed charging Serrano with violating 18 U.S.C. § 1542, false statement in application and use of passport. (R. 53-58; EP-10-mj-6202-NJG, ECF No. 1). Serrano had an initial appearance on December 21, 2010, and was temporarily detained without bond through the Christmas holidays. (EP-10-mj-6202-NJG, ECF No. 5). On December 27, 2010, Serrano appeared for a preliminary/detention hearing. (EP-10-M-6202-NJG, ECF Nos. 5, 8). Following the hearing, United States Magistrate Judge Norbert J. Garney found

---

[2] Reference to the record of administrative proceedings is designated by (R.[page number(s)]).

[3] The Act provides: "Notwithstanding any other provision of law, no monthly benefit under this subchapter shall be payable to any alien in the United States for any month during which such alien is not lawfully present in the United States as determined by the Attorney General." 42 U.S.C. § 402(y); *see also* 20 C.F.R. § 416.202.

[4] Serrano makes a number of allegations about the investigating OIG agent regarding her interactions with agencies and persons outside of the SSA. Serrano alleges that the OIG agent "unilaterally 'flagged' his record in the Social Security database, notified state agencies such as the Texas Department of Public Safety not to renew his Texas driver's license and harassed church staff in New Mexico about the baptismal certificate they issued him." (R. 250). Moreover, Serrano asserts that the OIG agent "blocked any attempt by [Serrano] to reapply for benefits, to submit more information to the Social Security Administration establishing his lawful presence in the country or to obtain a written decision on this matter." *Id.*

there was no probable cause to believe that Serrano violated 18 U.S.C. § 1542. (EP-10-mj-6202-NJG, ECF No. 8). Accordingly, Judge Garney ordered the complaint be dismissed and Serrano be released from custody.[5] *Id.*

In a Denial Notice dated November 15, 2011, almost a year after the Government abandoned its prosecution, Serrano was informed that his application for a social security number could not be processed because he had "not provided adequate evidence of [his] age, identity, and/or U.S. citizenship or lawful alien status as requested," and the "documentation [he] presented could not be verified by the issuing agency."[6] (R. 68). Two days later, a Notice of Revised Decision notified Serrano that his "disability has ended and that you are not entitled to payments for: August 2008 and continuing."[7] (R. 69).

On January 18, 2012, the SSA received a Request for Reconsideration from Serrano. (R. 78). In a letter dated March 26, 2012,[8] Serrano was informed that although he was entitled to DIB beginning May 2007, no benefits had been paid and his benefit payments were suspended for two reasons: (1) lack of proof of U.S. citizenship or lawful presence in the U.S.; and (2) due to work activity.[9] (R. 80-82). A Notice of Reconsideration dated August 8, 2013, informed Serrano that because no new evidence was submitted with his request, the prior determination

---

[5] The Government took no further action on the criminal prosecution of Serrano, and it did not exercise its option to present the case to a grand jury.
[6] Serrano's brief describes this letter as a denial of his application for benefits. (ECF No. 21, p. 2). However, as discussed by the SSA, the letter refers only to the denial of an application for a social security number. (R. 68, 97).
[7] This letter did not address the lawful presence issue. It addressed only the issue of continuing disability after a trial work period. (R. 69).
[8] "The March 26, 2012 notice . . . dismissed the January 18, 2012 appeal as a request for reconsideration of the lawful presence issue. This was because [Serrano] had not been sent any earlier notice that clearly explained the reason he had never been paid any disability benefits was because he had not submitted proof that he was lawfully present in the United States. The notice explained that is was therefore the initial determination on the lawful presence issue, and offered reconsideration as the appeal right." (R. 97).
[9] The cessation of benefits on this ground is not disputed in this case. The Court notes that while waiting for the resolution of his DIB case, Serrano reached retirement age. (ECF No. 21, at 3). His application for benefits serves as his protected filing date for retirement payments. *Id.*

3

that he did not meet the lawful presence requirement was affirmed. (R. 86-87). Subsequently, Serrano requested a hearing before an administrative law judge ("ALJ").[10] (R. 100-01).

On July 15, 2014, Serrano appeared with his attorney for a video teleconference hearing before the ALJ. (R. 533-56). During the hearing, Serrano testified that his son, Jesus Serrano Reza,[11] had been held in a prison in Brownsville, Texas, for a year, and that United States Citizenship and Immigration Services ("USCIS") was conducting an investigation into his son's citizenship. (R. 547). Serrano alleges that he was interviewed by USCIS, and that his son ultimately obtained citizenship through him. (R. 547, 554). Documentation regarding Serrano's son's citizenship determination was submitted at that time. (R. 554). On July 29, 2014, the ALJ sent a letter to Serrano noting that his son's N-600 application for derivative citizenship was missing certain documents, and requesting that Serrano provide all supporting paperwork relating to the N-600 application, among other documents. (R. 256-57).

On September 23, 2014, Serrano appeared with his counsel for a supplemental hearing. (R. 519-32). At the hearing, Serrano's attorney stated that they had supplied all the paperwork in their possession relating to the N-600 application. (R. 523).[12] On November 19, 2014, the ALJ issued a written decision finding Serrano's disability ended on May 1, 2008, and that no benefits were payable to Serrano because he is not a United States citizen and has not been lawfully present in the United States. (R. 20-27). On March 3, 2015, the Appeals Council denied Serrano's request for review, thereby making the ALJ's decision the Commissioner's final

---

[10] The great confusion regarding Serrano's reconsideration requests and requests for a hearing is explained in an agency memorandum from October 13, 2013. (R. 95-99).
[11] Plaintiff Jesse Hernandez Serrano will be referred to as "Serrano," and his son, Jesus Serrano Reza, will be referred to as either "Jesus Serrano" or Serrano's son.
[12] Serrano stated that his son's attorney did not respond to their inquiries, and that the agency simply suggested they submit an open records request. (R. 523).

administrative decision. (R. 6-8).

The sole contested issue is whether Serrano is a citizen of the United States.

## II.  DISCUSSION

A. STANDARD OF REVIEW

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citation omitted).

In determining whether there is substantial evidence to support the findings of the Commissioner, the Court must carefully examine the entire record, but may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (citation omitted). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citation omitted). If the Commissioner applied the proper legal standards and the findings are supported by substantial evidence, they are conclusive and must be affirmed. *Id.*

5

B. CITIZENSHIP

### 1. *Significant Probability Serrano's Son Derived Citizenship Through Serrano*

Serrano argues that the ALJ failed to properly evaluate the evidence submitted concerning Jesus Serrano's USCIS citizenship determination. The Commissioner states that there is no documentary proof in the record that Jesus Serrano derived citizenship through Serrano. (ECF No. 29, at 2). Contrary to the Commissioner's position, the record contains ample evidence that Serrano's son derived citizenship through him.

According to Serrano, his son derived United States citizenship through him in 2013. The record contains Serrano's son's N-600 application and accompanying documents, encompassing over fifty pages. (R. 294-343). The N-600 instruction form provides that the application should be filed if:

1. You are requesting a Certificate of Citizenship because you were born outside the United States to a U.S. citizen parent; **or**
2. You are requesting a Certificate of Citizenship because you automatically became a citizen of the United States after birth, but before you turned 18 years of age. (A parent or legal guardian can also file Form N-600 on behalf of a minor child.)

Instructions for Application for Certificate of Citizenship, USCIS Form N-600. Moreover, the record includes his son's Certificate of Citizenship which states that his son has been a United States citizen from the date of his birth even though he was born in Mexico in 1975. (R. 306). This indicates that Serrano's son was claiming U.S. citizenship under the first option – that he was born outside the United States to a U.S. citizen parent. *Id.*

The record only supports the conclusion that Serrano's son derived citizenship through his father. An initial USCIS examination document for the N-600 application requested a long

form birth certificate and a biographic form for Serrano. (R. 294). A subsequent examination document for the N-600 application requested evidence that established Serrano was "physically present in the United States for a period or periods totaling at least ten years, five after he reached the age of fourteen. All evidence must be prior to your birth in 1975." (R. 296).[13] The latter form also requested information regarding "the circumstances surrounding the birth of your father in the United States, [Serrano's parents'] legal status in the United States at the time of his birth and where your father resided from the time of his birth until 1975." (R. 296). Furthermore, in the affidavit by Serrano for USCIS in which he asserts he was born in the United States, the questions posed to him revolve around his background and that of his parents, not the background or citizenship of Jesus Serrano's mother. (R. 297-98). In short, the entire legal analysis in the documents available concerning USCIS's determination that Serrano's son is a citizen focuses *solely* on the elder Serrano's citizenship status. Although this evidence is circumstantial and does not conclusively state the basis for Jesus Serrano's citizenship, it is enough to have put the ALJ on notice of the significant probability that Serrano's son derived

---

[13] In *Sessions v. Morales-Santana*, 137 S.Ct. 1678 (2017), the Supreme Court summarized the laws concerning "derivative citizenship" for a child born abroad when one parent is a U.S. citizen and the other a citizen of another county:

> The main rule appears in 8 U.S.C. § 1401(a)(7) (1958 ed.), now § 1401(g) (2012 ed.). Applicable to married couples, § 1401(a)(7) requires a period of physical presence in the United States for the U.S.-citizen parent. The requirement, as initially prescribed, was ten years' physical presence prior to the child's birth, § 601(g) (1940 ed.); currently, the requirement is five years prebirth, § 1401(g) (2012 ed.). That main rule is rendered applicable to unwed U.S.-citizen fathers by § 1409(a). Congress ordered an exception, however, for unwed U.S.-citizen mothers. Contained in § 1409(c), the exception allows an unwed mother to transmit her citizenship to a child born abroad if she has lived in the United States for just one year prior to the child's birth.

*Id.* at 1686. The Supreme Court ultimately held that the gender-based distinction violated the equal protection principle. *Id.* at 1700-01.

7

citizenship through him.[14]

In her opinion, the ALJ noted that she requested that Serrano supplement the record with "all supporting paperwork relating to his son's N600 application for citizenship and any related documentation provided relating to any proof of his U.S. citizenship that was considered in the N600 application." (R. 26). The ALJ also stated that an affidavit relating to the N-600 application contradicted later testimony about his place of birth. (R. 26).[15] Critically, the ALJ failed to substantively address the merits of Serrano's argument regarding his son's derivative citizenship and explain what weight the USCIS citizenship determination was afforded.

2. *Deference to USCIS Citizenship Determination*

It is a well-established principle that considerable deference should be accorded to an executive department's interpretation of a statute it is entrusted to administer. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). Naturalization matters are the province of the Attorney General, and USCIS specifically. *See* 6 U.S.C. § 271. Other agencies may make determinations regarding citizenship, such as in passport applications before the United States Department of State. Courts recognize, however, that USCIS possesses expertise in the area of citizenship determinations. *See, e.g., Etape v. Chertoff*, 497 F.3d 379, 392 (4th Cir. 2007) (Hamilton, J., dissenting) ("[T]he plain language . . . makes abundantly clear that Congress

---

[14] Given Jesus Serrano's birth in Mexico, no other theory of citizenship is plausible but derivative citizenship through his father, the Plaintiff in the instant case.

[15] When asked to provide his date and place of birth, Serrano responded "MAY 21, 1951, born in McGaffey, New Mexico, McKinley County." (R. 297). Two questions later, when asked when he first came to the United States, Serrano answered "[f]rom birth to 1964, I lived in Coyote Matamoros Coahuila, Mexico." (R. 297). The ALJ discussed this seeming contradiction and weighed it as evidence against Serrano. The Court is not as persuaded that this apparent contradiction cuts against Serrano's citizenship claim and notes that USCIS, to whom the claim was made and deference is owed by the ALJ, *see supra* Section II.B.2, does not appear to have given this comment any weight. In fact, this discrepancy may be no discrepancy at all given Serrano's consistent claim that he returned to Mexico shortly after his birth in New Mexico.

fervently believed the Attorney General, through the employees of [USCIS,] who possess unique expertise in the field of immigration and naturalization, is in the best position to decide naturalization applications."). Accordingly, courts tend to allow USCIS to decide in the first instance whether to grant citizenship even when they possess jurisdiction over the matter. *See Maniulit v. Majorkas*, No. 3:12-CV-04501-JCS, 2012 WL 5471142, at *3 (N.D. Cal. Nov. 9, 2012) (collecting cases).

In certain circumstances, an ALJ must afford other agency determinations great weight. Specifically, the Fifth Circuit has held that a United States Department of Veterans Affairs ("VA") rating of disability, while not binding, "is evidence that should be considered and it is entitled to great weight." *DePaepe v. Richardson*, 464 F.2d 92, 101 (5th Cir. 1972). "Since the regulations for disability status differ between the SSA and the VA, ALJs need not give 'great weight' to a VA disability determination if they adequately explain the valid reasons for not doing so." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

The Court can discern no reason as to why the rationale leading to the deference accorded to a VA disability finding should not extend to this case. If anything, a USCIS citizenship determination deserves an even higher level of deference because that agency specializes in citizenship and immigration issues, and it applies the same laws in determining citizenship as the SSA is required to.[16] Accordingly, the Court finds that the ALJ has a duty to give great weight to a factual finding regarding citizenship made by USCIS in the course of a formal citizenship

---

[16] The case law indicates there are circumstances in which the SSA implicitly acknowledges USCIS's expertise in citizenship matters by delaying action until USCIS makes a citizenship determination. *See, e.g., Lowe v. Colvin*, Cv. No. SA-13-CV-145-DAE, 2014 WL 690644, at *6 (W.D. Tex. Feb. 21, 2014) ("Plaintiff received an interim decision from the SSA notifying him that, before his request [for a change in citizenship status] would be considered further, he would first have to contact and obtain a ruling as to his citizenship status from [USCIS.]").

determination unless she adequately explains the valid reasons for not doing so.[17]

The ALJ's lack of deference on a highly technical question already decided by the agency best suited to make this very special determination is problematic. The unintended result is having completely contradictory decisions between different agencies on the determination of an issue no less momentous than citizenship, from which important rights and privileges flow. The possibility that a citizen could be subjected to contradictory opinions between different bureaucracies on a matter so fundamental and precious strikes the Court as inequitable. That courts such as *DePaepe* and *Chambliss* have recognized the necessity for the SSA to afford deference to other agency determinations, such as a VA disability rating, suggests to the Court a tacit preference for avoiding seemingly incompatible inter-agency findings. The notion that the Government could deem a person a citizen for one purpose but not for another seems at odds with our fundamental concepts of citizenship.

3. *ALJ Erred in not Fully and Fairly Developing the Record and, Alternatively, by not Affording USCIS Citizenship Determination Appropriate Deference*

An ALJ is required to fully and fairly develop the facts relative to a claim for disability benefits. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). Nonetheless, a decision may only be reversed "if the claimant shows (1) that the ALJ failed to fulfill his duty to adequately develop the record, and (2) that the claimant was prejudiced thereby." *Brock v. Chater*, 84 F.3d 726, 728

---

[17] Similarly, it would be prudent to articulate what weight was given to other agency decisions, such as the OIG investigation and the denial of the passport. (R. 25). While the ALJ correctly concluded that just because "OIG was unable to establish probable cause to hold the claimant, this does not establish citizenship," the failure to meet even the low bar of probable cause does signal that the OIG investigation may not merit significant weight. *Id.* As for the passport application, the Court notes that the United States Department of State did not find that Serrano was a Mexican national, but merely determined the he had no provided sufficient documentation and stated that although "a U.S. passport cannot be issued to you at this time, . . . [w]e will consider any evidence you may provide in the future." (R. 284). Furthermore, in denying Serrano's application for a passport, the State Department cited a regulation which is not binding on the SSA. *Id.*

(5th Cir. 1996). To establish prejudice, a claimant must demonstrate that he "could and would have adduced evidence that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984).

The ALJ erred in not adequately addressing Serrano's claim that his son derived citizenship through him. The Court appreciates that the ALJ attempted to develop the record by requesting more material from Serrano regarding his son. However, given the dispositive nature of Serrano's citizenship and the circumstantial evidence already present in the record, this is simply not sufficient. Furthermore, this failure to develop prejudiced Serrano because it very may well have altered the result. Serrano's Mexican born son could have only derived citizenship through him if USCIS determined that Serrano is a citizen. As discussed above, a determination by USCIS that Serrano is a citizen is an agency decision that should be awarded great weight unless the ALJ clearly and specifically articulates valid reasons for not affording it such weight. It is safe to say that if the ALJ had determined that Serrano's son derived citizenship through him and afforded that determination great weight, it *might* have altered her finding of Serrano's citizenship. Thus, the ALJ erred in not fully and fairly developing the record.[18]

The Court declines to address any other issues raised by the parties at this time. On remand, the ALJ is ordered to take whatever steps necessary to determine whether Serrano's son derived citizenship through him.[19] If USCIS did specifically, or even merely de facto, determine

---

[18] Alternatively, if the record is sufficiently developed, the ALJ erred in not adequately addressing Serrano's claims regarding his son's citizenship by failing to (1) either afford the USCIS citizenship determination great weight or provide well-articulated reasons for not doing so, and (2) specifically state what weight the USCIS citizenship determination was given.

[19] Upon remand, it will be within the ALJ's discretion to determine when there is sufficient evidence to decide how

that Serrano is a United States citizen, the ALJ is further ordered to afford such a finding great weight unless she is able to articulate valid, specific reasons why a citizenship determination made after a thorough investigation by a sister agency that specializes in citizenship matters and applies the same laws regarding citizenship as the Commissioner should be wholly discarded.

### III.   CONCLUSION

The decision of the Commissioner will be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings.

**SIGNED and ENTERED** this 13th day of March, 2018.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE

---

Serrano's son obtained citizenship. However, the Court notes that the evidence already present in the record may be sufficient to make that finding.